

LEONARDO M. RAPADAS
United States Attorney
MIKEL W. SCHWAB
Assistant U.S. Attorney
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 93910
Tel: (671) 472-7332
Fax: (671) 472-7216

Attorneys for the United States of America



**FILED**
DISTRICT COURT OF GUAM
JUN - 3 2005
MARY L.M. MORAN
CLERK OF COURT



# IN THE UNITED STATES DISTRICT COURT

## FOR THE

## TERRITORY OF GUAM

| | |
|---|---|
| CARMEN K. RODIRGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>DONALD RUMSFELD, SECRETARY OF DEFENSE, AND DEPARTMENT OF DEFENSE SCHOOLS, _et al._,<br><br>Defendants. | Case No.: Civil Case No. 04-00029<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT** |

**COME NOW** the Defendants, by and through the United States Attorney for the District of Guam, and submit this memorandum in support of their Motion to Dismiss and for Motion for Summary Judgment.

# I.

## STATEMENT OF THE CASE

A. Plaintiff, Carmen K. Rodriguez, is a former employee (school teacher) of the Department of Defense (DOD) Domestic Dependent Elementary and Secondary Schools (DDESS). Plaintiff was employed by the Guam DDESS District from September 1997 until her termination for cause effective 16 May 2003.

B. During Plaintiff's employment with DDESS, she filed two separate administrative complaints of discrimination against the Agency, and then following her termination, she filed a mixed case appeal with the U.S. Merit Systems Protection Board. The appeal averred further allegations of illegal discrimination by the Agency. All of Plaintiff's administrative complaints were found to be either untimely or without merit by appropriate third party administrative bodies.

C. Plaintiff filed this action on 9 June 2004 seeking judicial review of the same allegations of discrimination which previously were either dismissed for untimeliness or found to be without merit.

D. Still pending before the Court is the Defendant's Motion filed 20 August 2004 to dismiss all individually named Defendants except for the Secretary of Defense. The Defendants filed an Answer to the Complaint on 6 August 2004. By Order dated 25 June 2004, the Court approved Plaintiff to proceed pro se without counsel. Trial is tentatively scheduled for later this year. Plaintiff has not engaged in any discovery since the filing of her Complaint.

2

## II.

## ARGUMENT AND AUTHORITY
## IN SUPPORT OF
## MOTION TO DISMISS

42 U.S.C. §2000e-16(c) provides that a Federal employee (or former employee) must file a civil action in the appropriate U.S. District Court within ninety (90) days of receipt by the employee of final action by the employing agency or Equal Employment Opportunity Commission on the employee's complaint of discrimination. Unfortunately for Plaintiff, she has failed to comply with this jurisdictional filing requirement, and her Complaint, at least in part, must be dismissed.

On 12 April 2001, Plaintiff filed a formal administrative complaint of discrimination with the Agency (DDESS). (Def. Ex. 3). The complaint alleged a continuing hostile work environment and discrimination based on race, color, national origin and reprisal for prior EEO activity; five specific claims were alleged.

By memorandum dated 13 February 2002, the Agency dismissed Plaintiff's complaint for untimeliness. (Def. Ex. 4). Subsequently, Plaintiff appealed the Agency's dismissal of her administrative complaint to the EEOC (Def. Ex. 5); however, the Commission denied the appeal and her request for reconsideration. (Def. Ex. 6 and 7). The reconsideration denial specifically advised Plaintiff of the following:

### COMPLAINT'S RIGHT TO FILE A CIVIL ACTION

> This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. . . . Both the request (for attorney services) and the civil action must be filed within the time limits as stated in the paragraph above ....

3

(Def. Ex. 7). The denial for the request for reconsideration was dated 22 October 2002, and the notice at the bottom of page two presumes receipt within five calendar days, i.e., 27 October 2002. Plaintiff should, therefore, have filed her Complaint in U.S. District Court not later than approximately 25 January 2003. But she waited until 9 June 2004 - - some 16 months past the filing deadline. Accordingly, the allegations of discrimination flowing from this administrative complaint should be dismissed. (See Defendants' Statement of Material Facts, para. G.).

Plaintiff filed her second administrative complaint of discrimination in May of 2002. (Def. Ex. 8). Ultimately, this case was disposed of by the EEOC Administrative Judge who issued a Decision Without a Hearing pursuant to 29 C.F.R. 1614.109(g). (Def. Ex. 16). The Agency adopted the Judge's decision in full and issued a Final Order by memorandum dated 18 February 2004. (Def. Ex. 17). This memo specifically advised Plaintiff of the following:

**Appeal Rights:**

> You have the right to appeal this Final Order to the EEOC or to file a civil action in a U.S. District Court . . . .
>
> If you elect to file a civil action, you must do so:
> - - within 90 calendar days of receipt of this Final Order, if you do not file an appeal with the EEOC . . . .
>
> Please note that courts in some jurisdictions have interpreted the Civil Rights Act of 1991 in a manner suggesting that a civil action must be filed within 30 calendar days from the date of receipt of this decision. To ensure that any civil action is considered timely, you are advised to file it within 30 calendar days from the

>date of your receipt of this decision or to consult with an
>attorney concerning the applicable time period in the
>jurisdiction in which your action would be filed

(Id.)

Plaintiff received the Agency's Final Order on 26 February 2004. (Id. at p. 3). She had, therefore, until 26 May 2004 to file a civil action in U.S. District Court. Again, unfortunately, she waited until 9 June 2004 to file her case - - some 14 days after the 90-day deadline. Accordingly, Defendant would respectfully assert that this allegation of discrimination should also be dismissed for failure to comply with statutory filing requirements.

In summary, Defendants would urge the Court to dismiss the allegations of discrimination stemming from both of Plaintiff's administrative EEO complaints (Defendants' Exhibits 3, 4, and 8) for which she now seeks judicial review. Dismissal is appropriate in light of Plaintiff's failure to comply with filing deadlines required by the statute.

### III.

### ARUGUMENT AND AUTHORITY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants would assert that there is no genuine issue of material fact concerning any of Plaintiff's remaining claims of discrimination, and that Defendants are entitled to judgment as a matter of law.

**A. The Summary Judgment Standard in Discrimination Cases.**

The Federal Rules of Civil Procedure provide that summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is

5

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 371, 322-23 (1986) (citing Fed. R. Civ. P. 56(c).

The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Andersen v. Liberty Lobby, Inc., supra at 242. A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., supra at 248; see also: Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986); Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

The party seeking summary judgment has the initial burden to establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, supra at 323. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the non-moving party.

6

To defeat a motion for summary judgment, the opposing party has the burden of establishing not only the existence of a factual dispute, but also that the factual dispute is both genuine and material to the outcome of the issue to be decided by introducing evidence countering that presented by the moving party. See International Woodworkers of America v. Chesapeake Bay Plywood Corp., 659 F.2d 1259, 1271 (4th Cir. 1981). A party opposing summary judgment cannot "create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d, 213, 214 (4th Cir. 1985). As the Supreme Court has stated, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, supra at 252. Unsupported speculation is not enough to withstand a summary judgment motion. Clayton v. Shalala, 111 F.3d 129 (4th Cir. 1997). Rather, the non-moving party must show the existence of specific material evidentiary facts. Ash v. United States Postal Service, Inc., 800 F.2d 409, 411-12 (4th Cir. 1986). To withstand summary judgment, the non-moving party may not rest upon mere allegations or denials, but must identify specific evidence indicating a genuine issue of material fact. Anderson, supra at 248-249; Celotex Corp., supra at 324. Evidence that is merely colorable or insufficiently probative will not, as a rule preclude summary judgment. Anderson, supra at 249-50.

In the Ninth Circuit, to survive summary judgment, a plaintiff must produce enough evidence to allow the trial judge to conclude either that the alleged non-

discriminatory reason(s) articulated by the employer was false, or that the true reason for the action taken was, in fact, a discriminatory one. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 918 (9th Cir. 1997). Defendants would respectfully assert that Plaintiff can do neither.

### B. Plaintiff Cannot Establish a *Prima Facie* Case of Discrimination Based On: Race, Color, or National Origin; Sexual Harassment; or Reprisal.

In her only viable claim of discrimination properly pending before this Court, Plaintiff has alleged discrimination based on race (Chamorro), color (brown), national origin (Chamorro/Hispanic), sexual harassment, and reprisal. These allegations stem from her mixed case appeal over her removal from Federal service filed with the U.S. Merit Systems Protection Board. See Def. Ex. 10, Tab 4a, p.3, blocks 31a and 32a. In subsequent response to Agency interrogatories, Plaintiff stated that the Agency violated the Civil Rights Act of 1964 in its removal action. (Def. Ex. 21). In response to Interrogatory No. 2, Plaintiff stated:

> I was discriminated against on the basis of race, color, national origin and my gender. Mr. Masters and Ms. Hall are biased against persons of Chamorro ancestry. They have removed me from various activities such as being RIF co-ordinator, they have denied me leave, and refused to let me participate in several school activities. Masters has discriminated against me by remarks and gestures which constitute sexual harassment. They refused to remedy conditions which affected my asthma.

(Id.)[1]

---

[1] Plaintiff dropped her claim of disability discrimination prior to the MSPB hearing. See Def. Ex. 19, p.2.

8
Case 1:04-cv-00029 Document 25 Filed 06/03/2005 Page 8 of 20

Despite this bold allegation, Plaintiff has provided neither direct or circumstantial evidence to show that either race, color, national origin, or sex was a motivating factor in the Agency's removal action. As the MSPB Administrative Judge correctly noted in her Decision:

> Appellant stated that Mr. Masters and Ms. Hall are biased against persons of Chamorro ancestry pointing to certain actions that were taken since Mr. Masters took over as principal of Andersen Elementary School. Yet, there is no evidence that any of the actions taken by Ms. Hall and Mr. Masters were taken or not taken for anything other than legitimate reasons. Furthermore, there is no credible evidence indicating any bias on the part of either Ms. Hall or Mr. Masters against persons of color or of Chamorro ancestry. The record reflects that Mr. Masters did things differently than the previous principal but this in and of itself does not establish bias or discrimination on his part. I find a preponderance of the credible evidence shows it was appellant's behavior, and not her race, color, ethnicity or sex that was the motivating factor in the removal action.

(Def. Ex. 9, pp. 54-55). Although Plaintiff can show she is a member of a protected class (Chamorro, brown, and female), and that she suffered an adverse employment action (removal), she cannot and has not demonstrated the third prong of a <u>prima facie</u> case of unlawful discrimination based on circumstantial evidence, i.e., a causal connection between her membership in the protected class and the adverse action. Quite simply, Plaintiff was removed from her teaching position because of her behavior and actions (AWOL, disorderly conduct and failure to follow instructions), not because of her race, color, ethnicity or sex. (<u>See</u> Def. Ex. 9, p. 55).

## C. Plaintiff's Claim of Sexual Harassment

Plaintiff alleges that she was sexually harassed by School Principal Masters between September of 2000 (when Mr. Masters arrived at Andersen Elementary School as the Principal) and October 11, 2002, the date of the incident in Plaintiff's classroom which ultimately led to her removal. (Def. Ex. 10, Tab 4j).[2] This alleged pattern of sexual harassment by Mr. Masters consisted of these incidents:

(1) Plaintiff claims at their first meeting in September of 2000 (a "welcoming breakfast") that Mr. Masters shook hands with her, held her hand too long, and that his eyes traveled down to her breasts. Judge Carol Teather of the MSPB made the following findings concerning this allegation:

> I find it is more probably true than not that Mr. Masters shook appellant's hand at a welcome breakfast when he first came to the school. This would be a normal and proper thing for a new principal to do when meeting one of his teachers. It would also be normal and proper for the principal to look carefully at the face of the teacher in order to fix a name with a face. As for appellant's claim that he held her hand too long and looked at her breasts, I find her statements in this regard to be incredible. Although this may well have been appellant's impression, I find it highly unlikely that this is what actually occurred. Considering the record as a whole, I find appellant to be highly emotional and prone to exaggeration. She also appears to have a

---

[2] Defendants would note that these allegations were raised for the first time in Plaintiff's oral response to the notice of proposed removal on 10 March 2003. (Def. Ex. 10, Tab 41, p. 5). She did contact an EEO Counselor on 17 October 2002 alleging Mr. Masters sexually harassed her and assaulted her on 11 October 2002. (Def. Ex. 10, Tab 3). In the email message, she made a vague reference to "incessant harassment for more than two years," but did not mention the three incidents described to Mr. Kelsey in her oral response to the notice of proposed removal. The Counselor tried to investigate the matter, but Plaintiff would not cooperate. No formal complaint was ever filed.

Mr. Kelsey, prior to making a final decision on Plaintiff's case, investigated the claims and found them to be without merit. See Def. Ex. 10, Tab 4f, para. 3, and Tab 4i.

10

> tendency to take things personally which are not meant to be personal. There is no evidence that Mr. Masters ever attempted to socialize with appellant, showed anything more than a professional interest in her, or afforded her special treatment. Thus, I find it is more probably true than not that Mr. Masters simply shook appellant's hand in a greeting when he met her at the welcome breakfast.

(Def. Ex. 9, p. 56).

(2) Plaintiff's second claim of sexual harassment occurred in the fall of 2000 just outside the school building where she avers she encountered Mr. Masters. Once again, Judge Teather's findings are dispositive of the issue:

> Appellant testified that she had just dropped off her students and was walking between buildings to her classroom when she saw Mr. Masters looking at her. Appellant stated that the wind was blowing at the time, and she was holding her skirt to prevent it from blowing up. Appellant further testified that she walked toward Mr. Masters and he asked her where she was coming from. According to appellant, when she told him the cafeteria, he took a deep breath and said "smells good." Appellant additionally testified that when Mr. Masters said this his eyes went down toward her leg area, and she felt he was smelling her. Appellant's testimony is uncorroborated.
>
> Mr. Masters testified that he never told appellant that she smelled good that he could recall.
>
> I find appellant has a vivid imagination. "Smells good" is a perfectly ordinary remark to make to someone who said they had just come from the cafeteria. More likely than not what was meant by such a remark is that the cooking odors coming from the cafeteria smell good. As for Mr. Masters looking at appellant's leg area, I seriously doubt that this occurred or if it did it was unintentional. In all probability, what actually happened was that appellant was embarrassed at having Mr. Masters observe her trying to deal with her skirt blowing up in the wind, and she made assumptions that had no validity.

11

> In her oral response to the notice of proposed removal, appellant gave a slightly different description of her meeting with Mr. Masters. See summary, IAF tab 11, subtab L. She stated that she asked Mr. Masters where he had come from and he replied the cafeteria. She further stated that he took a deep breath, and said "your perfume smells good." The inconsistency in appellant's description of the event casts doubt on the credibility of appellant's story. Further doubt is raised by the lack of any evidence that appellant actually wore perfume to work. Furthermore, even assuming Mr. Masters complimented appellant on her perfume, such a one-time remark does not necessarily rise to the level of sexual harassment. As previously stated, there is no evidence that Mr. Masters ever attempted to socialize with appellant or took anything more than a professional interest in her.

(Def. Ex. 9, pp. 56-67).

(3) The third incident of alleged sexual harassment by Mr. Masters occurred at the School District Christmas Party in December of 2001. Plaintiff contends that Mr. Masters was dancing in a lewd manner with another employee. (Def. Ex. 10, Tab 4j, para 4). Plaintiff was repulsed by his behavior, and when she was supposed to be Mr. Masters' dance partner, she switched with another teacher, Ms. Taitano. Allegedly, Mr. Masters was upset with Plaintiff because she did not want to dance with him and gave her a dirty look. However, Plaintiff's testimony was uncorroborated, and Ms. Taitano stated that she saw nothing inappropriate. (Def. Ex. 10, Tab 4i, last page). Further, Mr. Kelsey testified at the MSPB hearing that he found no corroboration to support Plaintiff's allegations against Mr. Masters. (Def. Ex. 9, pp. 57-58).

The Equal Employment Opportunity Commission defines "sexual harassment" as follows:

> (a) Harassment on the basis of sex is a violation of section 703 of title VII. Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.
>
> (b) In determining whether alleged conduct constitutes sexual harassment, the Commission will look at the record as a whole and at the totality of the circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred. The determination of the legality of a particular action will be made from the facts, on a case by case basis.

29 C.F.R. § 1604.11. The Commission has also provided guidance that a "reasonable person" standard should be applied in determining whether the challenged conduct was sexual in nature or was based sufficiently severe or pervasive to create a hostile environment. See "EEOC Policy Guidance on Current Issues of Sexual Harassment," March 19, 1990, Part C. "Determining Whether Work Environment is "Hostile"; see also: Ellison v. Brady, 924 F.2d 872 (9th Cir. 1991); Fuller v. City of Oakland, 47 F.3d 1522 (9th Cir. 1995).

After carefully considering all of the evidence in the record, the MSPB Judge found no discrimination on the basis of Plaintiff's sex by means of sexual harassment:

> I find appellant has not established that she was sexually harassed by Mr. Masters. The behaviors described by appellant . . . do not meet the definition of sexual

13

> harassment. There is no credible evidence showing any
> physical contact between appellant and Mr. Masters of a
> sexual nature [a handshake is not generally considered to
> be a sexual gesture, but, rather, a formal greeting.] There
> is also no credible evidence that Mr. Masters made any
> sexual advances or remarks to appellant. The record does
> not show that Mr. Masters showed any personal interest in
> appellant or treated her any differently than her
> colleagues. A preponderance of the credible evidence in
> the record shows Mr. Masters' relationship with appellant
> was strictly professional.
>
> I find appellant has not established that she was sexually
> harassed by Mr. Masters. See e.g., Viens v. Dept of
> Interior, 92 M.S.P.R. 256, 263 (2002) "Mere utterance of
> an epithet that engenders offensive feeling in an employee
> does not sufficiently affect the conditions of employment
> to implicate Title VII, and conduct that is not severe or
> pervasive enough to create an objectively hostile or
> abusive work environment . . . is beyond Title VII's
> purview." Off-hand comments, and isolated incidents
> (unless extremely serious) will not amount to
> discriminatory charges in the terms and conditions of
> employment that constitute sexual harassment.) see also
> Salazar v. Dept of Energy, 88 M.S.P. R. 161, 165 (2001).

(Defendants' Exhibit 9, p. 59)

Defendants would respectfully assert that since Plaintiff has engaged in no discovery in this case, the record has not changed at all since the MSPB and EEOC made their findings. Accordingly, these findings should be adopted by this Court.

### D. Plaintiff's Claim of Reprisal.

Plaintiff's final basis of alleged discrimination is that of reprisal or retaliation for having previously utilized the Federal sector complaint process by filing various EEO complaints against her supervisor. She thus contends that the Agency removed her from her position in May of 2003 in retaliation for her filing of these previous

complaints. However, closer examination of the facts discloses that Plaintiff cannot establish a prima facie case of discrimination based on reprisal.

To establish a prima facie case of retaliation, Plaintiff must show that: (1) she engaged in protected activity; (2) the accused Agency official(s) knew of the activity; (3) the Plaintiff suffered an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. See e.g. Wrighten v. Metropolitan Hosp., 726 F.2d 1346 (9th Cir. 1984). Clearly, Plaintiff engaged in protected activity in this case. She filed formal complaints of discrimination against Mr. Masters and Ms. Hall on 12 April 2001 (Def. Ex. 3), 14 May 2002 (Def. Ex. 8), and lastly on 17 October 2002 (Def. Ex. 10, Tab 3). The MSPB Administrative Judge also noted in her Decision that both the proposing and deciding officials in Plaintiff's removal action, Dr. Burdick and Mr. Kelsey, were aware of Plaintiff's discrimination complaints. Thirdly, there is no doubt that Plaintiff suffered an adverse employment action, i.e., she was removed from her Federal teaching position in May of 2003. (Def. Ex. 10, Tab 4b). Thus, Plaintiff has established the first three elements of a prima facie case; unfortunately, she is unable to establish the last element - - a causal connection between her participation in protected activity and her removal.

As the MSPB Judge stated in her Decision:

> Both the proposing official, Assistant Superintendent Susan Burdick, and the deciding official, Acting Superintendent Douglas Kelsey, were aware of appellant's discrimination complaints. Test. Burdick and Kelsey. Yet there is no evidence that either Assistant Superintendent Burdick or Acting Superintendent Kelsey had any motive to retaliate

15

> against appellant. They were not involved in appellant's discrimination complaints, and their testimony and statements clearly reflect that the instant removal action was based solely on the charged misconduct. I find appellant has not established a nexus between her EEO complaints and her removal for serious misconduct. <u>See</u> e.g. <u>Taylor v. Dept. of Air Force</u>, 80 M.S.P.R. 450, 457 (1998); <u>Lockridge v. U S P S</u>, 72 M.S.P.R. 613, 624-25 (1996). <u>See</u> also <u>Richard v. DOD</u>, 66 M.S.P.R. 146, 155 (1995) and <u>Peterson v. Dept. of Trans.</u>, 54 M.S.P.R. 178, 184 (1992) (where the relevant agency officials knew of the protected activity but were not accused of involvement in any of the alleged acts of prohibited discrimination, the appellant failed to show that the adverse action could have been retaliation).

(Def. Ex. 9, pp. 60-61). Under these circumstances it is simply impossible for Plaintiff to meet her burden of establishing a <u>prima facie</u> case of discrimination based on reprisal or retaliation.

## IV.

## **CONCLUSION**

For all the reasons stated above, Defendants would respectfully request that the Court enter an Order dismissing the allegations of discrimination contained in formal complaints dated 12 April 2001 (Def. Ex. 3) and 14 May 2002 (Def. Ex. 8) for failure to meet the statutory filing deadline provided for in 42 U.S.C. 2000e-16(c). As to all remaining claims of discrimination contained in Plaintiff's complaint, Defendants would request an Order granting summary judgment on the grounds that there is no genuine issue of material fact, and that Defendants are entitled to judgment as a matter of law.

RESPECTFULLY submitted this 2ND day of June 2005.

LEONARDO M. RAPADAS<br>
United States Attorney<br>
District of Guam and NMI

By: _____<br>
MIKEL W. SCHWAB<br>
Assistant U.S. Attorney<br>
Sirena Plaza, Suite 500<br>
108 Hernan Cortez Avenue<br>
Hagatna, Guam 93910<br>
Tel: (671) 472-7332<br>
Fax: (671) 472-7216

OF COUNSEL:

ROBERT E. SUTEMEIER
Associate General Counsel
Office of General Counsel
Department of Defense Education Activity (DoDEA)
700 Westpark Drive
Peachtree City, Georgia 30269
Telephone: (678) 364-6462
Facsimile: (678) 365-8074

## INDEX OF EXHIBITS

**TAB**  **DESCRIPTION**

1 Letter of Appointment dated 14 August 1997 and SF-50 dated 15 September 1997

2 SF-50 dated 07-16-98

3 Formal Complaint of Discrimination in the Federal Government dated 04-12-01

4 Notice of Dismissal of Complaint dated 02-13-02

5 Notice of Appeal/Petition to EEOC dated 03-16-02

6 EEOC Appeal Decision dated 06-20-02, Appeal No. 01A22263

7 EEOC Denial of Request for Reconsideration dated 10-02-02, Request No. 05A21054

8 Complaint of Carmen Rodriguez, Agency Docket No. DD-FY02-16

9 Merit Systems Protection Board: Initial Decision dated 01-05-04

10 MSPB Agency File, Docket No. SE-0752-03-0309-I-1 (Carmen Rodriguez)

11 Fax to EEOC Chief Administrative Judge Thomas Cosentina from Carmen Rodriguez dated 11-01-02

12 EEOC Order Dismissing Complaint Without Prejudice dated 01-27-03

13 Correspondence from DoDEA forwarding Report of Investigation to Judge MacMillian dated 3 April 2003

14 Fax to Judge MacMillian from Carmen K. Rodriguez reinstating request for hearing dated 07-25-03

15 Response to Notice of Intent to Issue a Decision Without a Hearing Pursuant to 29 C.F.R. 1614.109(g) dated 07-23-03

16 Decision Without a Hearing Pursuant to 29 C.F.R. 1614.109(g) dated 01-21-04, EEOC Case No. 370-2003-02478X

17  Final Order of Agency on Complaint of Discrimination dated 02-18-04

18  Appellant Affirmative Defenses dated 07-18-03

19  Summary of Telephonic Prehearing Conference dated 08-05-03, MSPB Docket No. SE-0752-03-0309-I-1

20  EEOC Decision dated 04-29-04, Petition No. 03A40067

21  Responses to Request For Admissions

Exhibit 1