# EXHIBIT 10

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### SEATTLE FIELD OFFICE

| | |
|---|---|
| CARMEN K. RODRIGUEZ,          ) | |
|                 ) | |
|     Appellant,          ) | DOCKET NUMBER |
|                 ) | SE-0752-03-0309-I-1 |
|    v.              ) | |
|                 ) | Date:  8 July 2003 |
| DEPARTMENT OF DEFENSE (DOD)   ) | |
| DOMESTIC DEPENDENT ELEMENTARY ) | |
| AND SECONDARY SCHOOLS (DDESS)  ) | |
|                 ) | |
|     Agency.          ) | |

# AGENCY FILE

Respectfully submitted by,

**Robert E. Sutemeier**
**Associate General Counsel**
**Office of General Counsel**
**Department of Defense Education Activity**
**821 San Carlos Road, Building 3813**
**Pensacola, Florida  32508-5531**
**(850) 452-9401 // Fax (850) 452-9405**
**E-mail:  robert.sutemeier@cnet.navy.mil**

**Agency Representative**

## MERIT SYSTEMS PROTECTION BOARD
## DESIGNATION OF AGENCY REPRESENTATIVE

          Appellant:  Carmen K. Rodriguez
            Agency:  Department Of Defense
   Docket Number:  SE-0752-03-0309-I-1
             Judge:  Carol J. Teather

     The agency  may be represented in this appeal by an individual of its
choice, unless the choice results in a conflict of interest for the person
chosen.   The  agency  representative  chosen  must  be  able  to  proceed
promptly. Continuances or extensions of time normally will not be granted
because the  agency delayed  in arranging  for representation  or needs to
change representatives.

     A  representative  assists and  counsels the agency in the preparation
and presentation  in defense of  the  appeal and  appears in  the agency's
behalf  at    hearings  or  other  proceedings  before  the  Merit  Systems
Protection  Board. The  representative  has  the authority  to  settle  the
appeal. Any  limitation on  this settlement  authority  must be  filed in
writing with the Board.  All communications from  the Board and the other
parties to  the  appeal will  be directed  to  the agency  representative.
Therefore, the agency .should  assure  that mail  directed  to  the address
stated below will be received promptly by the agency representative.

     The individual  named below  is hereby  designated to  represent  the
agency in  connection with  the appeal identified below pending before the
Merit Systems  Protection Board  and to receive all information concerning
this appeal  from the  Board and  the other  parties to  the appeal.  This
designation may  be cancelled  by the  agency.  The agency must notify the
Board and the other parties in writing of any change.

Designated Agency
Representative  **ROBERT E. SUTEMEIER, ASSOCIATE GENERAL COUNSEL**

      Telephone No. **(850) 452-9401**

      FAX No.        **(850) 452-9405**

      Address:       **DoD Education Activity, Office of General Counsel**

                     **821 San Carlos Road, Building 3813**

                     Pensacola                  **FL**      **32508-5531**
                        City                   State       Zip Code

                                      **Associate General Counsel, 18 June 2003**
      Signature & Title of Authorizing Official:       (Date)

**THIS FORM  MUST  BE PRINTED OR TYPED, SIGNED, AND RETURNED TO
THIS    OFFICE.    A    COPY   MUST   BE   SERVED   ON   THE   APPELLANT
AND HIS/HER REPRESENTATIVE, IF ANY.**

# TABLE OF CONTENTS

| LOCATION | DATE | DOCUMENT DESCRIPTION | SOURCE |
|---|---|---|---|
| Tab 1 | 07-08-03 | Agency Response | DoDEA General Counsel |
| Tab 2 | 07-08-03 | Collective Bargaining and and Grievance Statement | DoDEA General Counsel |
| Tab 3 | 07-08-03 | Statement of Formal Discrimination Complaint | DoDEA General Counsel |
| Tab 4a | 05-11-03 | MSPB Appeal with/attachments | MSPB, Seattle Field Office |
| Tab 4b | 05-17-03 | SF-50:  Removal | DoDEA Personnel Center |
| Tab 4c | 05-19-03 | Memorandum, Subject: Response to Questions | Guam School District (GSD) |
| Tab 4d | 05-12-03 | Fax, Subject:  Employment status/questions | GSD |
| Tab 4e | 05-12-03 | Memorandum, Subject:  Decision of Proposed Removal | GSD |
| Tab 4f | 05-08-03 | Memorandum, Subject:  Decision of Proposed Removal | GSD |
| Tab 4g | 05-07-03 | Memorandum, Subject:  Case No. SF-CA-03-0555 | FLRA San Francisco Region |
| Tab 4h | 04-14-03 | Fax, Subject:  Physician's note | Appellant |
| Tab 4i | 04-14-03 | Kelsey's Investigation | Doug Kelsey |
| Tab 4j | 04-03-03 | Fax, Subject:  Confidential Information | Appellant |
| Tab 4k | | Document Accompanying Appellant's Written Response | Appellant |
| Tab 4l | 03-10-03 | Notes of Oral Response and Written Reply | Dr. Sue Burdick Appellant |
| Tab 4m | 02-26-03 | Memorandum, Subject: Proposed Removal | GSD |

i

# TABLE OF CONTENTS (continued...)

| LOCATION | DATE | DOCUMENT DESCRIPTION | SOURCE |
|---|---|---|---|
| Tab 4n | 02-18-03 | Notes of Meeting | Dr. Sue Burdick |
| Tab 4o | 02-18-03 | Memorandum, Subject: Proposed Removal | GSD |
| Tab 4p | 02-18-03 | E-mail, Subject: Memo for Record | Sherry Hall |
| Tab 4q | 02-14-03 | Memorandum, Subject: Request to Withdraw WC Claim | Appellant |
| Tab 4r | 02-07-03 | E-mail, Subject: Appellant's WC Claim | DoDEA General Counsel |
| Tab 4s | Week of 02-03-03 | Miscellaneous Memorandums | GSD |
| Tab 4t | 01-29-03 | Fax, Subject: Form CA-1 | Appellant |
| Tab 4u | 01-28-03 | Fax, Subject: Physician's Report to CA-1 | Appellant |
| Tab 4v | 01-14-03 | Memorandum, Subject: Employment Matters | GSD |
| Tab 4w | 01-09-03 | Fax, Subject: Admin Leave | Appellant |
| Tab 4x | 01-07-03 | Memorandum for Record, Subject: Phone Conversation | GSD |
| Tab 4y | 12-05-02 | Fax, Subject: Sick Leave | Appellant |
| Tab 4z | 11-19-02 | Fax, Subject: Address and Telephone Number | Appellant |
| Tab 4aa | 11-29-02 | E-mail, Subject: Memorandum for Record | Sherry Hall |
| Tab 4bb | 11-01-02 | Fax, Subject: Sick Leave Excuse | Appellant |
| Tab 4cc | 10-31-02 | Lawsuit | U.S. Attorney Guam |

# TABLE OF CONTENTS (continued...)

| LOCATION | DATE | DOCUMENT DESCRIPTION | SOURCE |
|---|---|---|---|
| Tab 4dd | 10-18-02 | Miscellaneous Memorandums for Records | GSD |
| Tab 4ee | 10-18-02 | Memorandum, Subject: Phone Call RE Mail Delivery | GSD |
| Tab 4ff | 10-15-02 | Memorandum, Subject: Placement on Admin Leave | GSD |
| Tab 4gg | 10-15-02 | E-mail, Subject: Parent Phone Call w/atch | Sherry Hall |
| Tab 4hh | Week of 7-11 Oct 03 | Sign In/Out Record | GSD |
| Tab 4ii | 10-11-02 | Agency Record of 10-11-02 Incident w/Appellant | GSD |
| Tab 4jj | 09-15-97 | SF-50: Appointment | DoDEA Personnel Center |
| Tab 4kk | 06-23-03 | 10 U.S.C. 2164 | U.S. Code Annotated |
| Tab 4ll | 03-12-96 | DDESS Instruction 1435.1 | DoDEA General Counsel |
| Tab 4mm | 05-02-03 | Consideration of *Douglas Factors* | Doug Kelsey DoDEA General Counsel |
| Tab 4nn | 10-15-02 | E-mail, Subject: Incident/CR | Sherry Hall |
| Tab 4oo | 10-16-02 | Memorandum, Subject: CR/AES | Glenda Johnson |
| Tab 4pp | 05-27-02 | E-mail, Subject: Orientation Schedule for SY 02-03 | Joe Masters |
| Tab 4qq | 10-18-02 | Memorandum, Subject: CR/Report Cards | GSD |
| Tab 4rr | Undated | Report Card Procedures | GSD |
| Tab 4ss | 05-14-03 | E-mail, Subject: Parental Release Forms | GSD |

iii

# TABLE OF CONTENTS (continued...)

| LOCATION | DATE | DOCUMENT DESCRIPTION | SOURCE |
|----------|------|----------------------|--------|
| Tab 4tt | SY 02-03 | Excerpts From Teacher's Handbook | GSD |
| Tab 4uu | August, September, October 2002 | AES Faculty Bulletins | GSD |

iv

CARMEN K. RODRIGUEZ,    )
                        )
          Appellant,    )
                        )        DOCKET NUMBER
       v.               )        SE-0752-03-0309-I-1
                        )
                        )        Date:  8 July 2003
DEPARTMENT OF DEFENSE (DOD)   )
DOMESTIC DEPENDENT ELEMENTARY )
AND SECONDARY SCHOOLS (DDESS) )
                        )
          Agency.       )
                        )

## AGENCY RESPONSE

COMES NOW the Agency, and pursuant to the Acknowledgement Order of 13 June 2003, submits the Agency Response in this case.

## I.

## STATEMENT OF THE CASE

Appellant, Ms. Carmen K. Rodriguez was a school teacher employed by the Agency at the Domestic Dependent Elementary and Secondary Schools (DDESS) Guam School District, Andersen Elementary School, Andersen Air Force Base, Guam.  By letter dated 18 February 2003, Appellant was notified of the Agency's intent to remove her from Federal Service for Absence Without Leave (AWOL), Disorderly Conduct, and Failure to Follow Instructions.  Following an

oral and written response by the Appellant to the notice letter, the Agency notified Appellant by letter dated 8 May 2003 of the Deciding Official's final decision to remove Appellant 14 May 2003, which was subsequently amended by letter dated 12 May 2003. Thereafter, Appellant filed a timely appeal with the U.S. Merit Systems Protection Board, Seattle Field Office.

II.

## STATEMENT OF FACTS

A. The Department of Defense has historically operated two statutorily distinct elementary and secondary school systems for children of military personnel. The overseas DoD schools are known as DoDDS (Department of Defense Dependents Schools) and operate pursuant to 20 U.S.C. § 921, *et seq*. The DoD Domestic Schools began their statutory authorization in 1951 pursuant to 20 U.S.C. § 241.

B. The DoD Domestic Schools were administered from 1950-1980 by the Secretary of Education who was charged to "make such arrangements as necessary" to provide free education for children who reside on Federal property. Between 1980 and 1986, the Department of Education and the Department of Defense shared responsibility for the schools, and then in 1987, though the present, DoD assumed full fiscal, policy, and operational responsibility for the schools.

C. In 1994, Congress repealed 20 U.S.C. § 241 and reauthorized the DoD Domestic Schools under Public Law 103-337, codified at section 2164 of title 10, United States Code. (Tab 4kk.)

2

D.  DDESS is a Federal agency charged to provide elementary and secondary education to eligible dependents of military members, and certain Federal civilian employees, who reside on military installations in the continental United States, and military members and Federal civilian employees who are assigned and working on the islands of Puerto Rico and Guam—U.S. Commonwealths, Territories, and Possessions.  DDESS operates 69 elementary and secondary schools at 16 different locations in the southeast United States, West Point, New York, Guam, and Puerto Rico.  The Guam DDESS District operates four schools:  Andersen Elementary School (kindergarten through 5th grade) and Andersen Middle School (6th through 8th grade) located on Andersen Air Force Base; and South Guam Elementary/Middle School (kindergarten through 8th grade) and Guam High School (9th through 12th grade) located on the Naval Base.

E.  Appellant was hired and appointed by the Agency on 15 September 1997 as an elementary school teacher at the Andersen Elementary School, Andersen Air Force Base.  (Tab 4jj.) [1]

F.  On Tuesday, 8 October 2002, the Andersen Elementary School Principal, Mr. Joe E. Masters, went to Appellant's classroom and informed Appellant that the large metal storage cabinet in her classroom would have to be removed because it was a safety hazard to the children.  (Tab 4ii, p. 14.)  Mr. Masters told Appellant that it would probably be Friday when the cabinet would be removed, but that she could retain the trays kept in the cabinet which

---

[1]  DDESS professional employees such as Appellant work a 10-month year, *i.e.,* 190 work days; however, their pay is "spread" over a 12-month basis.

students used to store supplies. (*Id.*) Appellant asked Mr. Masters if he would provide another cabinet and he said he would check around to see if there was a bookcase which could be moved to her classroom. (*Id.*)

G. At approximately 10:30 a.m. on Thursday, 10 October 2002, Mr. Masters went to Appellant's classroom to remind her that the metal cabinet would be removed the following morning, and that he had located a bookcase to replace it. He also reminded her that she could keep the storage trays, but to please have them removed from the cabinet by the next morning. Appellant stated she would. (Tab 4ii, p. 14.)

H. On Friday, 11 October 200, between 6:30 and 7:00 a.m., the metal cabinet was removed from Appellant's classroom. Later, at approximately 8:00-8:15 a.m., Mr. Masters and Mr. Barnhardt, Supply Technician, went back to the classroom to inquire if Appellant needed assistance in placing the bookcase. When Mr. Masters arrived, Appellant was videotaping the students and engaging in a conversation about the metal cabinet. Mr. Masters advised Appellant that she should not be filming the students and Appellant responded that she would "tape" Mr. Masters. Mr. Masters told Appellant that she should not tape him either. At this point, Appellant became agitated, raised her tone of voice, and became aggressive in her mannerisms and tone of voice. Appellant yelled at Mr. Masters "The lawyer said I could keep the shelf." As Mr. Masters moved toward the door, Appellant followed close behind, saying in a loud voice that she would add this to her complaint. She then proceeded to wave a finger in Mr. Master's face and loudly questioned whether he was trying to threaten her. Appellant

4

raised her voice again saying: "Are you saying you will get rid of me?" and "I want security." (Tab 4ii, p. 14-15.)

I. Shortly thereafter, when the Assistant Principal, Ms. Sherry Hall, responded to Appellant's classroom following her call to the front office, Appellant again became disorderly in her classroom. (Tab 4ii, p. 9-11.) At approximately 1:40 p.m. that day, Appellant left the Andersen Elementary School without permission and without following proper procedures to request leave. Her normal duty hours were 7:30 a.m. until 3:00 p.m. (Tab 4hh.)

J. On Tuesday, 15 October 2003, Appellant was absent without authority from her duty station, Andersen Elementary School. She had not requested leave, obtained approval to be absent, nor had she telephoned the school to advise she would not be present. On 14 and 15 October 2002, Appellant made several harassing telephone calls to Mrs. Deborah Webster, the parent of one of her students, Danney Webster. During those calls, Appellant made negative comments about Mr. Masters, and alleged that he had threatened Appellant's life. Appellant advised Mrs. Webster to keep her daughter home from school. (Tab 4gg.) Also, on 15 October 2002, the Agency placed Appellant in a paid administrative leave status until further notice. (Tab 4ff.) The letter from the Agency was not delivered since the address which the Agency had on file, provided by the Appellant, was not accurate. (Tab 4ee.)

5

K.  On 18 October 2002, the Agency attempted to contact Appellant telephonically, to no avail.  Thereafter, the school staff conveyed a message to a friend of Appellant's, Ms. Flores, to contact Appellant and ask her to call Mr. Masters.  (Tab 4dd.)

L.  On 31 October 2002, Appellant, through the Guam Legal Services Corporation, filed suit in the Superior Court of Guam seeking a temporary and permanent restraining order and injunction against Mr. Masters.  However, the U.S. Attorney intervened in the matter and had the case removed to U.S. District Court where it is currently pending.  (Tab 4cc.)

M.  On 1 November 2002, Appellant sent a facsimile message to the Assistant Principal, Ms. Sherry Hall, asking the Agency to "accept my sick leave excuse."  The fax included a physician's statement that Appellant was under her care November 4 through November 15 and "needed extended work leave due to insomnia, asthma, and stress reaction."  (Tab 4bb.)

N.  On 12 November 2002, Appellant called the Assistant Principal, Ms. Hall.  Ms. Hall told Appellant that several parents in her classroom were concerned about book orders for their children, and Ms. Hall asked Appellant if she knew where the books were.  When Appellant stated the books were at her home, Ms. Hall told her to deliver them to the Andersen Air Force Base main gate and Ms. Hall would ensure they were delivered to the children.  Although Appellant agreed to this procedure, she did not follow it.  Instead, Appellant gave the books to Ms. Flores and asked her to distribute them for her.  (Tab 4aa.)

6

O.  On 20 November 2002, Appellant sent a facsimile message to the Guam Superintendent, Dr. Richard Tom, which provided a mailing address and telephone number.  Appellant requested a copy of the administrative leave letter and information concerning lesson plans.  (Tab 4z.)

P.  In early December 2002, Appellant was directed to come to the Guam DDESS District Office on 5 December 2002 to meet with Dr. Sue Burdick, Assistant Superintendent, at 1:00 p.m.  Appellant did not appear for the appointment, but rather sent a 2-page facsimile message to Ms. Hall advising that she was sick and could not come to work.  Appended to the message was a Standard Form (SF) 71 requesting sick leave for 5 and 6 December 2002.  (Tab 4y.)

Q.  The Guam School District was closed during the period 9 through 20 December 2002 due to a typhoon, and then from 20 December 2002 until 6 January 2003 for the holiday break.

R.  At approximately 7:30 a.m. on 6 January 2003, Appellant telephoned the Andersen Elementary School and advised the Office Assistant that she was sick, and would be sick through 17 January 2003.  (Tab 4x.)

7

S.  On 9 January 2003, Appellant sent a 6-page facsimile to Ms. Hall,

Andersen Elementary School Assistant Principal. [2]  (Tab 4w.)  Included therein

was a SF-71 requesting "Other Paid Absence" for the period 5-20 December

2002, and a SF-71 requesting "Other Paid Absence" for the period 6 January

2003-14 February 2003.  Appellant requested "administrative leave and/or

Workmen's Compensation leave form for 6 January-14 February 2003 for

continued medical problems with severe asthma and severe stress reaction."

Accompanying the SF-71 was a medical slip from "The Doctor's Clinic."

---

[2]  Page 3 of the fax is difficult to read, but the Agency's "translation" is set forth below:

> Re:     Administrative Leave form 05-20 Dec 02
>         - Administrative Leave and/or Wokmen's Com. For
>            06 Jan-14 Feb 03
>         Dr.'s excuse note for 06 Jan-14 Feb 03
>         Non-receipt of Notification of Administrative
>         Leave Letter (months)

Please accept the following:

1. Dr.'s excuse note for 06 Jan-14 Feb 03.

2. Administrative leave form for 05-20 Dec 02 due to asthma flare, Severe stress reaction, (W., Burdick) and Super Typhoon Pongsoria.

3. Administrative leave and/or Workmen's Compensation leave form for 06 Jan-14 Feb 03 for continued medical problems with severe asthma and severe asthma  reaction.  Please mail all Agency signed leave forms since 15 Oct 02 via certified  mail to: PO Box 10482, Tamuning, Guam 96931 or give the copies to Ms. Elizabeth Flores, my chosen representative.  Failure to accept Ms. Flores as my representative will cause legal problems and can be viewed as an unfair labor practice among other legal problems.

4. I still have not received my copy of the Administrative Leave notification since last year.  I consider this to be an unfair labor practice since I have asked for this repeatedly and have been repeatedly denied.  Is this showing good faith?

8

T. By letter dated 14 January 2003, the Guam DDESS Assistant Superintendent, Dr. Sue Burdick, advised Appellant of the following:

(1) Address, telephone numbers, and identification of Agency "point of contact" for all employment-related matters;

(2) Appellant's sick leave request for 5 and 6 December 2002 had been approved, as well as her request for administrative leave for the period 9-20 December 2002, because of the typhoon;

(3) Administrative leave for the period 6 January-14 February 2003 was disapproved since the medical documentation provided was insufficient for the Agency to determine the appropriateness of sick leave;

(4) Effective 6 January 2003, Appellant was placed in an AWOL non-pay status which would continue until she requested sick leave or leave without pay. Such a request must be supported by appropriate medical documentation form her physician. A "list of requirements" and a position description were attached for Appellant to provide to her physician;

(5) Continuing AWOL may form the basis for a disciplinary action;

(6) Worker's Compensation claim forms were also attached for Appellant's use.

(Tab 4v.) The letter was provided to Appellant's designated representative, Ms. Elizabeth Flores.

U. On 28 January 2003, Appellant sent a facsimile to Dr. Richard Tom, Guam Superintendent. Attached to the cover memorandum was a completed "Attending Physician's Report" for a Worker's Compensation Claim. (Tab 4u.)

9

On the following day, Appellant sent another facsimile to Dr. Tom which included a Form CA-1 "Federal Employee's Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation." (Tab 4t.) Appellant alleged in block 13. of the form that Mr. Master's terrorized and assaulted me threatening my life." Also enclosed with the facsimile was Appellant's "Designation of Representative" form which the Agency had sent to her as an attachment to its letter of 14 January 2003.

V.  During the week of 3-7 February 2003, several parents whose children were in Appellant's classroom complained to school employees that they had been contacted by the Guam Police Department and asked to bring their child to their office to make a statement regarding the 11 October 2002 incident. (Tab 4s.) Also on 7 February 2003, at the Superintendent's request, Agency counsel sent a draft "CA-1 Supervisor's Statement" to DDESS Guam officials in order to respond to Appellant's Worker's Compensation Claim. (Tab 4r.)

W.  On 13 and 14 February 2002, before the Agency finalized Appellant's CA-1 file for submission to the Department of Labor, Appellant withdrew her Worker's Compensation Claim "effective immediately." (Tab 4q.)

X.  On Tuesday morning, 18 February 2003, Appellant came to Andersen Elementary School at approximately 7:30 a.m.; at that time, she was advised by Ms. Hall to report to the District Office. (Tab 4p.) Later that day, Appellant arrived at the District Office and met with the Assistant Superintendent, Dr. Sue Burdick, who served her with a Notice of Proposed Removal for: Absence Without Leave (AWOL); Disorderly Conduct; and Failure to Follow Instructions.

10

(Tab 4o)  Dr. Burdick thereafter wrote a memorandum of her meeting with Appellant that day.  (Tab 4n)  Appellant was placed in a paid administrative leave status pending the final decision in her case.

Y.  By memorandum dated 26 February 2003, the proposing official, Dr. Burdick, advised Appellant that the Deciding Office in her case would now be Mr. Doug Kelsey, Acting Guam DDESS Superintendent.  (Tab 4m.)

Z.  On 10 March 2003, Appellant made her oral presentation to the Deciding Official, Mr. Doug Kelsey, Acting DDESS Guam Superintendent.  The Agency's notes and Appellant's documents from that meeting may be found at Tab 4l.  A few days later, Appellant provided the remainder of her written presentation.  (Tab 4k.)  During Appellant's oral presentation to Mr. Kelsey she made several allegations of sexual harassment by Mr. Masters.  Mr. Kelsey asked her for more specific information which she provided by facsimile on 3 April 2003.  (Tab 4j.)  Thereafter, Mr. Kelsey conducted an informal inquiry into the allegations.  (Tab 4i.)  The inquiry did not reveal any improper conduct or actions by Mr. Masters which would call into question his credibility.  Also, on 14 April 2003, Mr. Kelsey received a facsimile message from Appellant which stated:

> Please accept this note from Dr. Erickson which reads,
> "Carmen Rodriguez had severe exacerbation of asthma which
> was difficult to control and required multiple office visits and
> near hospitalization and aggressive medical management".
> Also, pleas send your response to regarding the status of my
> employment to": P.O. Box 10482, Tamuning, Guam 96931.
> I would also like Ms. Liz Flores, my authorized representative,
> to receive a copy of your response. Thank you.

The doctor's statement was attached.  (Tab 4h.)

AA.  On 5 May 2003, Appellant filed an unfair labor practice charge against the Agency and Mr. Masters.  (Tab 4g.)

BB.  By memorandum dated 8 May 2003, Mr. Kelsey notified Appellant of his findings concerning the allegations contained in the Notice of Proposed Removal letter.  (Tab 4f.)  Although Mr. Kelsey did not sustain all alleged specifications, he did sustain all three charges by a preponderance of the evidence.  The letter advised Appellant that she be would removed from Federal service effective "14 April 2003."  (Paragraph 2 of the letter.)  Since the letter cited the wrong month, the Agency sent another letter on 12 May 2003 notifying Appellant that the effective date of her removal would be 16 May 2003.  (Tab 4e.)  The notice provided Appellant of her available appeal rights.

CC.  Also on 12 May 2003, Appellant sent Mr. Kelsey a facsimile which posed five questions.  (Tab 4d.)  Mr. Kelsey and Dr. Burdick responded on 19 May 2003.  (Tab 4c.)

DD.  Appellant was removed form Federal service effective 17 May 2003. (Tab 4 b.)  Thereafter, she filed a timely appeal of the action with the Seattle Field Office of the U.S. Merit Systems Protection Board.  (Tab a.)  The appeal was received on 13 June 2003.

### III.

### <u>STATEMENT OF ISSUES</u>

A.  **Was The Appellant's Removal From Federal Service For Such Cause As Will Promote The Efficiency Of The Service?**

12

**B.    Did The Agency Commit Harmful Procedural Error?**

**C.    Did The Agency's Action Violate The Law?**

## IV.

### AGENCY RESPONSE
### TO
### APPELLANT'S CONTENTIONS

**A.    Appellant's Removal From Federal Service Was For Such Cause As Will Promote The Efficiency Of The Service.**

MSPB precedent is clear that in order to sustain a disciplinary removal against an employee, the Agency employee must prove by preponderant evidence that the charged misconduct occurred, that a nexus exists between the conduct and service efficiency, and that the penalty is reasonable.  Narrington v. Department of Air Force, 83 MSPR 23 (1999); Risner v. FAA, 7 MSPR 480 (1981); Douglas v. VA, 5 MSPR 280 (1981).

The Agency accepts this burden and will prove, through its witnesses and exhibits, that Appellant committed the offenses alleged, and that there is a definite nexus between those offenses and the Agency's educational mission. Finally, we will prove, through the testimony of the Deciding Official, Mr. Doug Kelsey, that the penalty of removal was reasonable under the circumstances.

**B.    The Agency Did Not Commit Harmful Procedural Error.**

Appellant has alleged four instances of harmful procedural error (Tab 4a):

1. The Effective date of removal on 14 April 2003 was prior to 08 May 2003 which is the date of the Decision of Proposed Notice.

13

2. The Agency failed to consider the extenuating circumstances of the Appellant's medical condition exacerbated by the trauma incident on 11 October 2002 as corroborated by two physicians.

3. The Agency failed to apply the progressive discipline concept as provided in the labor agreement.

4. The Agency failed to apply constructive discipline as provided in the labor agreement.

"Harmful error" is defined as "error by the Agency in the application of its procedures which, in the absence or cure of the error, would have been likely to cause the Agency to reach a conclusion different than the one reached." 5 C.F.R. 1201.56(c)(3). The law requires the appellant to prove by preponderant evidence that: a. The agency committed procedural error; and (b) the error was prejudicial or impaired the employee's rights. Boylan v. USPS, 704 F.2d 573 (11th Cir. 1983). None of the allegations enumerated by Appellant in her appeal constitute harmful procedural error.

### Error On The Removal Letter.

The Agency erred in its decision letter of 8 May 2003 (Tab 4f) in stating in paragraph 2 that Appellant's removal would be effective "14 April 2003." Obviously, this was a typographical error which the Agency promptly corrected in its letter to Appellant dated 12 May 2003. (Tab 4e.) The Agency advised Appellant of the correct date of separation, i.e., 16 May 2003. This error was not prejudicial nor did it impair Appellant's rights.

### Failure To Consider Appellant's Medical Condition.

The only medical documentation submitted by Appellant following the incident on 11 October 2002 was the following:

14

a. Dr. Debra Ericson's note dated 31 October 2002 which stated that Appellant (who was already on paid administrative leave as of 16 October 2002) was ill due to "insomnia, asthma, and stress reaction." (Tab 4bb.) The doctor stated Appellant would need to be on work leave from 4-15 November 2002.

b. Dr. Debra Ericson's note dated 10 January 2003 which stated that Appellant was under her care for "severe asthma and severe stress reaction." (Tab 4w.) The note accompanied Appellant's request for "Administrative Leave and/or Workman's Compensation due to severe asthma, severe stress reaction."

c. Dr. Ericson's note faxed by Appellant to Mr. Kelsey on 14 April 2002 which states: "Carmen Rodriguez had severe exacerbation of asthma which was difficult to control and required multiple office visits and near hospitalization and aggressive medical management." (Tab 4h.) [3]

Following receipt of Appellant's Administrative Leave request for the period 6 January-14 February 2003, the Agency immediately wrote a lengthy letter to her explaining that Dr. Ericson's note was insufficient to establish the Appellant was incapacitated for work and for the Agency to intelligently decide if sick leave was appropriate. (Tab 4v.) The letter provided a "List of Requirements" (from 5 C.F.R. Part 339) so her physician could submit appropriate medical documentation. Also included as an attachment to that letter was a copy of Appellant's Position Description.

---

[3] Appellant did include a memo from Dr. Leon-Guerrero dated 7 April 2003 as an attachment to her MSPB Appeal. (Tab 4a., p. 6.) However, the Agency never saw this document until 18 June 2003 when it received the MSPB Acknowledgement Order and Appellant's Appeal. The Deciding Official, Mr. Kelsey, was never provided this document by the Appellant prior to her removal.

15

Then, on 18 February 2003, when the Agency notified Appellant of her proposed removal, the proposing official, Dr. Burdick, specifically advised Appellant in paragraph 7. of the letter:

> 7. If you have a medical condition which may have contributed to the reasons for this proposed removal and you wish this considered, you may furnish medical documentation with your reply. The costs of any medical evaluations are at your own expense. Any medical statement(s) which you submit may not simply state a conclusion, but must fully document the nature of the medical condition and clearly show it caused an impact upon the reasons for this proposed removal.

Despite these notices, Appellant never submitted appropriate, detailed medical documentation. Under these circumstances, the Agency denies the allegation that it failed to properly consider Appellant's medical condition in removing her from Federal service.

## Failure To Apply Progressive Discipline.

While the Agency recognizes the concept of progressive discipline (Tab 2, pp. 108-109 of the parties' collective bargaining agreement), that concept does not ban removal for first offenses if they are serious offenses. The Agency's action in this case was at all times in compliance with the DDESS Disciplinary Instruction. (Tab 4ll.) Accordingly, this allegation of procedural error is without merit.

## Failure To Apply Constructive Discipline.

"Constructive discipline" is discussed on page 108 of the labor agreement. (Tab 2.) The Agency can only guess as to the Appellant's contention here, but if the allegation is that the Agency's action was not timely, the facts do not support such a finding.

16

The Agency initiated the disciplinary action in this case approximately four months following the initial incident on 11 October 2002. During that period, the following events occurred:

a. Agency investigation of the incident;

b. Thanksgiving holiday;

c. Typhoon;

d. Holiday break;

e. Appellant's continuing AWOL from 6 January through 18 February 2003.

Under these circumstances, the Agency's action was extremely timely.

**C.    The Agency's Action Did Not Violate The Law.**

In block 31 of the Appeal Form, Appellant avers that the Agency's action "violated the law." She further seemingly avers in block 32.a. that the Agency's action was discriminatory, but fails to offer any elaboration on the issue despite indicating an attached explanation.

The Agency is thus at a loss to defend an unspecified allegation of a violation of law and/or discrimination.

**V.**

**CONCLUSION**

The evidence will clearly establish that Appellant's removal was for such cause as to promote the efficiency of the service, the penalty selected was reasonable under the circumstances. Additionally, Appellant will be unable to prove any harmful procedural error or violation of law. Accordingly, the appeal should be denied.

17